UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRAVIS RITCHIE,<br><br>Plaintiff,<br><br>v.<br><br>ENGLISH, DICE, THOMPSON-YOUKER, MEYERS, CAVES, JOHNSON, WALLACE, GAS, BECK, ANGLE,<br><br>Defendants. | CAUSE NO. 3:26cv1253 DRL-SJF |

OPINION AND ORDER

Travis Ritchie, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Ritchie alleges ten staff members and officials at the Miami Correctional Facility (MCF) failed to protect him from multiple physical and sexual assaults by other offenders. On January 21, 2026, his cellmate, Jason Hancock, groped Mr. Ritchie's genitals while he slept. Mr. Ritchie reported the incident, and Sgt. Caves immediately removed him from the cell he was assigned to with Offender Hancock. Mr. Dice, the internal affairs investigator, interviewed Mr. Ritchie and took his statement that morning, but Mr.

Ritchie has not met with or heard from him since. According to Mr. Ritchie, Offender Hancock is "flagged" in the Indiana Department of Correction (IDOC) Delta system as a "high ranking member of the Aryan Brotherhood." ECF 2 at 5. After the fondling incident, Offender Hancock allegedly told other members of the Aryan Brotherhood that Mr. Ritchie had "snitched" on him, which resulted in a "Green Light" to have Mr. Ritchie raped or murdered by the gang members. *Id*. Mr. Ritchie says he was denied protective custody after the original incident, but he admits he was moved away from Offender Hancock to a different housing unit at MCF. Mr. Ritchie claims the new housing unit was filled with "numerous" Aryan Brotherhood members who threatened to rob and kill him. Mr. Ritchie submitted several requests "to speak to someone he trust[ed] and take his assault seriously." *Id*. He also filed numerous for protective custody.

On March 20, 2026, Ofc. Wallace advised Mr. Ritchie he was going to be transferred back to the same unit where he had originally been assaulted. According to Mr. Ritchie, Ofc. Wallace said he was "uncomfortable putting him back into the cell with the offender who assaulted the plaintiff but he had to because it was Sgt. Caves orders." *Id*. at 16. Ofc. Wallace allegedly advised Mr. Ritchie to "resist" the officers so he could go to segregation rather than back with Offender Hancock. *Id*. Ofc. Gas, who was also there during this conversation, allegedly told him the same thing. Although it's not entirely clear, exhibits attached to the complaint suggest Mr. Ritchie resisted the transfer but was ultimately sent to the same unit—although not the same cell as Offender Hancock—per Sgt. Caves's orders. Mr. Ritchie insists Sgt. Caves was aware his life was in danger because he knew about the original incident and because he specifically told him

afterwards that "multiple offenders were ordered by Jason Hancock to rape and kill the plaintiff." *Id*. at 14.

On May 8, 2026, Mr. Ritchie was assaulted by his new cellmate, Offender James White. By this point, Mr. Ritchie says he had made ten requests for protective custody "for protection. . . against offenders who were flagged as Aryan Brotherhood gang members." *Id*.; ECF 2 at 5. On May 28, 2026, he was stabbed while he slept by Offender White above his left eye. Offender White specifically told Mr. Ritchie he did it at the direction of Offender Hancock.

Mr. Ritchie submitted another request for protective custody. He says it was "denied for no specific reasoning" by L.T. Meyers, but he admits he was taken out of the cell with Offender White. *Id*. However, he was placed in a new cell in the same housing unit with another Aryan Brotherhood gang member, Offender Birge. According to Mr. Ritchie, Offender White told Offender Birge to "beat his ass and make him check in." *Id*. at 6. Two days later, he was punched several times in the face by Offender Birge. He submitted another request for protection. It was denied by L.T. Meyers, but he was again moved to a new cell. This time his cellmate, Offender Christopher Truax, was an "Aryan Brotherhood Probate." *Id*. Offender Truax sexually assaulted Mr. Ritchie on May 30, 2026. Then, on June 10, 2026, Mr. Ritchie awoke to Offender Truax standing over him with a knife and a note from Offender Hancock stating, "[I]f you want to earn your Aryan Brother patch the plaintiff must be raped and killed." *Id*. Offender Truax raped Mr. Ritchie at knifepoint. The next day, Mr. Ritchie gave Ofc. Johnson a note stating what had happened, but Ofc. Johnson "deliberately and indifferently did nothing" about it. *Id*.

Later that night, Mr. Ritchie told an unknown officer what had happened that morning and insisted his life was still in danger. The unknown officer "took the Plaintiff out of the cell and to Protective Custody AHU housing unit where the Plaintiff remains present day." *Id.* at 7. Mr. Ritchie has sued Warden English, Mr. Dice, Ms. Thompson-Youker, L.T. Meyers, Sgt. Caves, Ofc. Johnson, Ofc. Wallace, Ofc. Gas, Unit Team Manager Mrs. Beck, and Unit Team Manager Mr. Angle for compensatory and punitive damages.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (ellipsis omitted). That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quotations, brackets, and citations omitted). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had

actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' does not necessarily correlate to a 'substantial risk'"). "[A] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment, however, falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

As an initial matter, the court notes that Mr. Ritchie doesn't allege he advised any of the defendants of a potential threat prior to the first sexual assault by Offender Hancock on January 21, 2026. Thus, to extent Mr. Ritchie is seeking to bring claims against the defendants based on the fondling incident, they will be dismissed. The remainder of the analysis applies to the alleged physical and sexual assaults that occurred on May 8, 28, and 30, and June 10, 2026. Following the initial incident, Mr. Ritchie claims he made multiple officials—including Warden English, Mr. Dice, Ms. Thompson-Youker, Ms.

Beck, Mr. Angle, L.T. Meyers, Sgt. Caves, and Ofc. Johnson—personally aware, either in writing or in person, of the specific threat(s) to his life made by Offender Hancock and the other members of the Aryan Brotherhood. He says they denied his repeated requests for protective custody and continued to place him in units that put him in harm's way. Though supervisory liability alone isn't sufficient, *see Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009), Mr. Ritchie has alleged enough to give rise to an inference of deliberate indifference. Although Mr. Ritchie will ultimately need to prove that each defendant was aware of a specific risk of harm *and* purposefully disregarded it, *see, e.g., Farmer*, 511 U.S. at 837 and *Lewis*, 107 F.3d at 554, the court will give him the benefit of all reasonable inferences at this early stage and allow him to proceed against these defendants in their individual capacity.

The claims against Ofc. Wallace and Ofc. Gas do not fare as well. He alleges that, on March 20, 2026, they forced him to return to the unit where he was originally assaulted. However, it isn't reasonable to infer their actions were deliberately indifferent because Mr. Ritchie specifically alleges Sgt. Caves ordered them to do so. According to Mr. Ritchie himself, the officers were simply following the direct orders of Sgt. Caves in the moment rather than being deliberately indifferent to his needs. Thus, the claims against these officers will be dismissed.

As a final matter, the court must address the motion for preliminary injunction Mr. Ritchie filed with his complaint. ECF 4. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir.

2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[1] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms

[1] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully*, 977 F.3d at 613 (quotations omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and quotations omitted).

Mr. Ritchie is not proceeding on any permanent injunctive relief claims, so he has no chance of success on the merits. *See Univ. of S. Ind.*, 43 F.4th at 791 (recognizing this step is "often decisive," and a court need not analyze the remaining elements). Moreover, in his motion, Mr. Ritchie asks to be "in protective custody *until* he is transferred to a different facility due to the facts (sic) multiple offenders in general population" at MCF are trying to kill and rape him. ECF 4 (emphasis added). Later in the motion, he argues that granting the preliminary injunction will prevent additional assaults "because the plaintiff will *remain* in protective custody/administrative segregation around officers who are able to observe him more frequently." *Id.* (emphasis added). In his complaint—which was signed on August 21, 2026, the same day as the motion for preliminary injunction—Mr. Ritchie states that, on June 11, 2026, an officer "took the Plaintiff out of the cell and *to Protective Custody AHU housing unit where the Plaintiff remains present day*."

ECF 2 at 7 (emphasis added). Based on these facts, the court concludes Mr. Ritchie is currently in protective custody at MCF. He doesn't provide any indication or evidence to suggest he will be moved out of protective custody soon. Nor does he suggest he is currently in danger in the protective custody unit. He simply speculates that he could be harmed at some point in the future if he is ever removed from protective custody. This isn't sufficient to warrant preliminary injunctive relief. *See, e.g., Gevas*, 798 F.3d at 481; *see also Univ. of S. Ind.*, 43 F.4th at 791 (when assessing a motion for preliminary injunctive relief, the court doesn't need to "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor"); *Schillinger*, 954 F.3d at 994 (factual details must be sufficient to raise allegations from "mere speculative possibility to plausibility"). Accordingly, the motion will be denied.

For these reasons, the court:

(1) DENIES the motion for preliminary injunction (ECF 4);

(2) GRANTS Travis Ritchie leave to proceed against Warden English, Mr. Dice, Ms. Thompson-Youker, L.T. Meyers, Sgt. Caves, Ofc. Johnson, Unit Team Manager Mrs. Beck, and Unit Team Manager Mr. Angle in their individual capacities for compensatory and punitive damages for failing to protect him from the repeated physical and sexual assaults by Aryan Brotherhood gang members on May 8, 28, and 30, and June 10, 2026, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Ofc. Wallace and Ofc. Gas;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden English, Mr. Dice, Ms. Thompson-Youker, L.T. Meyers, Sgt. Caves, Ofc. Johnson, Unit Team Manager Mrs. Beck, and Unit Team Manager Mr. Angle at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden English, Mr. Dice, Ms. Thompson-Youker, L.T. Meyers, Sgt. Caves, Ofc. Johnson, Unit Team Manager Mrs. Beck, and Unit Team Manager Mr. Angle to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

August 31, 2026

*s/ Damon R. Leichty*
Judge, United States District Court